UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROGER SIMMONS, an Individual,<br><br>    Plaintiff,<br>vs.<br><br>RUSH TRUCK CENTERS OF IDAHO, INC., a Delaware corporation d/b/a/ RUSH TRUCK CENTER, IDAHO FALLS; and RUSH ENTERPRISES, INC., a Texas corporation<br>    Defendant. | Case No. 4:16-cv-00450-EJL<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Pending before the Court is Defendant's Motion to Compel Arbitration and Dismiss Lawsuit (Dkt. 8.) The parties filed responsive briefing and the motion is now ripe for decision. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument. As explained more fully below, the Court grants Defendant's Motion to Compel Arbitration and Dismiss Lawsuit.

**MEMORANDUM DECISION AND ORDER- 1**

## BACKGROUND/FACTS

As set forth in the Complaint, Plaintiff, Roger Simmons, was an employee of the Defendants for approximately nine years ending on or about May 22, 2015. (Dkt. 1.) On February 17, 2014, approximately eight years after he began working with Defendants, Plaintiff signed both Rush Enterprises and It's Affiliates' Employment at Will and Arbitration Agreement ("Arbitration Agreement") and Acknowledgment of Receipt of Employee Handbook ("Acknowledgement"). (Dkt. 8-3, 8-5.) The Employee Handbook includes, in part, an Employee Complaint, Grievance, and Dispute Resolution Process (the "DRP"). (Dkt. 8-4.)

Just over one year after signing the Arbitration Agreement and Acknowledgment, on February 26, 2015, Plaintiff was injured on the job and tore his retina. He took an unpaid leave of absence from work for surgery to repair the injury. (Dkt. 1.)

On May 18, 2015, Plaintiff informed Defendants that he was medically released to return to part-time, light duty work. Plaintiff contends he could have performed many of his job duties within these restrictions. (Dkt. 1.)

Four days later, on May 22, 2015, Plaintiff received a letter from Defendants informing him that his benefits were terminating because of his leave of absence status and providing him COBRA qualification information. Plaintiff interpreted this letter as his notice of termination from employment. Defendants have not paid Plaintiff since he went on leave, scheduled him to work, or asked when or whether he could return to work. (Dkt. 11.)

On October 7, 2016, Plaintiff filed this lawsuit claiming the Defendants' conduct violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901. (Dkt. 1.) On February 17, 2017, in response to the Complaint, Defendants filed the instant Motion to Dismiss and Compel Arbitration. (Dkt. 8.) Defendants argue that the claims at issue are governed by the parties' contract as set forth in the Arbitration Agreement and the DRP. (Dkt 8-3, 8-4.) Plaintiff argues that neither of these documents, either alone or together, constitute a valid or enforceable contract under Idaho state contract law principles.

## STANDARD OF LAW

"The Federal Arbitration Act (FAA) requires courts to 'place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Publom v. C.H. Robinson Company*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The FAA expressly provides that arbitration agreements are generally valid and enforceable unless grounds for revoking the agreement "exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. This permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casaratto*, 517 U.S. 681, 687 (1996).

Whether there is a legal or equitable reason for revoking an arbitration agreement is a matter of state contract law. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Federal courts determining the validity of an agreement to arbitrate should apply ordinary state-law principles that govern the formation of contracts: thus, general

**MEMORANDUM DECISION AND ORDER- 3**

contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements in whole or in part. *Id.*

## ANALYSIS

Plaintiff argues the Arbitration Agreement does not constitute a valid contract, because it lacks mutual assent and consideration. Plaintiff further argues the agreement cannot be enforced because it is both procedurally and substantively unconscionable.

**1. The Arbitration Agreement Constitutes a Valid Contract.**

As explained more fully below, the Court finds the contract is supported by mutual assent and consideration.

*A. Mutual Assent*

"Contract formation requires mutual assent." *Gray v. Tri-Way Const. Services, Inc.*, 210 P.3d 63, 69 (Idaho 2009). Mutual assent is "[a] distinct understanding common to both parties." *Id.* (quoting *Thompson v. Pike*, 838 P.2d 293, 299 (1992)). "[M]utual assent or a 'meeting of the minds' must occur on every material term in the contract." *Bremer, LLC v. East Greenacres Irrigation Dist.*, 316 P.3d 652, 657 (Idaho 2013). The existence of mutual assent is generally a question of fact. *Gray*, 210 P.3d at 69.

While the Arbitration Agreement is an adhesion contract, it is an unambiguous written document complete on its face as to all material terms. These terms includes *inter alia*: the scope of the agreement; an express waiver of the right to a jury trial; arbitrator selection, administration, procedure and costs; and governing law. (Dkt. 8-3.) Moreover, the contract was drafted by the Defendants and signed by Plaintiff attesting to the facts he read, understood, and agreed to be legally bound to all of its terms. (Dkt. 8-3).

**MEMORANDUM DECISION AND ORDER- 4**

Plaintiff makes two arguments to support its contention that the Arbitration Agreement lacks mutual assent: (1) Defendants did not sign either the Arbitration Agreement or the Employee Handbook Acknowledgement and (2) Defendants did not promise to do anything.

First, Plaintiff contends the lack of signatures is demonstrative of Defendants' lack of agreement, acceptance, or acknowledgment of any contract. (Dkt. 11, pp. 5-6.) This argument ignores the fact Defendants drafted the Arbitration Agreement and are unambiguously bound by its terms.

The Arbitration Agreement constituted an offer that was accepted upon Plaintiff's signature binding both parties to its terms. *See Intermountain Forest Mgt., Inc. v. Louisiana Pacific Corp.*, 31 P.3d 921, 925 (Idaho 2001) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 24, 26, 30(2)). Further, Idaho law is clear: "the lack of a signature does not necessarily prevent contract formation." *Id.*

Examining the Arbitration Agreement as a whole, the Court finds that Defendants clearly meant to be bound by the terms of the contract once accepted by Plaintiff. The only reference to an additional signature required is in the context of the "At-Will Employment Provision." (Dkt 8-3) ("The only exceptions to the at-will employment relationship are written agreements signed by the President of the Company.").

There is no other indication that an additional signature from the Defendants was required in order to render the Arbitration Agreement binding on the parties. Instead, an additional signature was required only to the extent an employee sought to create an exception to the Arbitration Agreement's terms.

**MEMORANDUM DECISION AND ORDER- 5**

Other courts within the Ninth Circuit who have considered this issue have come to the same conclusion and found that an arbitration agreement bearing only the signature of the employee is enforceable under the FAA. "An arbitration agreement bearing only an employee's signature is valid and enforceable even if it is unsigned by the employer." *Rojas v. Lewis Brisbois Bisgaard & Smith LLP*, 2014 WL 3612568, at *4 (D. Nev., July 18, 2014) (citing *Ambler v. BT Americas, Inc.,* 964 F.Supp. 2d 1169, 1174 (N.D. Cal. 2013); *see also, Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed by the parties.")

Second, Plaintiff contends the contract lacks mutual assent because it lacks mutuality of obligation. (Dkt. 11, p. 6.) Relying solely upon the language of the DRP, Plaintiff contends only he is required to arbitrate and Defendants are under no such obligation. *Id.*

However, the DRP and Arbitration Agreement were signed on the same day. While they work together, the Arbitration Agreement is an independent, stand-alone contract.

The DRP is a comprehensive dispute management program including arbitration as a final means of resolving disputes. (Dkt. 8-4.) The DRP expressly refers to the Arbitration Agreement. *Id.* at p. 7. In contrast, the Arbitration Agreement provides the specific terms governing arbitration. (Dkt. 8-3.)

The DRP can be changed unilaterally by the Defendants but such changes cannot impact the terms of the Arbitration Agreement. The DRP states that it "may be amended by the Company at any time by giving at least 15 days' notice to current employees." (Dkt. 8-4, p. 7.) However, it also states that such amendments will not apply to any proceedings

**MEMORANDUM DECISION AND ORDER- 6**

already initiated and, most importantly, the DRP and any amendments thereto will have no impact upon the terms of the Arbitration Agreement. "[E]mployees' At-Will Employment and Arbitration Agreement between the Company and any employee are unaffected by any amendment to the DRP, Corporate HR or other policies, or HR manuals . . . ." (Dkt. 8-4, p. 7.)

Furthermore, the Arbitration Agreement, at least in theory, applies equally to both parties. (Dkt. 8-3.) It states that "any claim, dispute, and/or controversy that Employee may have against Company . . . *or Company may have against Employee,* shall be submitted to and determined exclusively by binding arbitration." (Dkt. 8-3) (emphasis added).

Of course, some of the employer's claims are excepted from this general term, specifically: "claims by Company for injunctive or other equitable relief, including claims for unfair competition and the use or unauthorized misappropriation and/or disclosure of trade secrets or confidential information." (Dkt. 8-3, p. 2.) Nonetheless, the Arbitration Agreement is otherwise generally binding on both parties for all other claims brought by either employee or employer.

In addition, the Employee was under no obligation to enter into the Arbitration Agreement. The Arbitration Agreement states, "employee will not be subject to disciplinary action of any kind for opposing the arbitration provisions of this agreement." (Dkt. 8-3). This suggests the Plaintiff had a choice and elected to enter the Arbitration Agreement as a means of resolving any disputes that might arise against Defendants related to the employment relationship and specifically falling within the scope of the Arbitration Agreement.

**MEMORANDUM DECISION AND ORDER- 7**

In short, the Court finds the Arbitration Agreement is supported by mutual assent. Under the plain and unambiguous terms of the contract, both parties agreed to resolve any future claims, such as the discrimination claims raised here, through arbitration.

### B. *Consideration*

Plaintiff also argues the contract fails for lack of consideration. Specifically, Plaintiff argues that Defendants' promises are illusory given that the Defendants reserve the right to amend the DRP with 15 days' notice to the employee.

"To be enforceable at law, an agreement must be supported by adequate consideration." *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 272 P.3d 491, 498 (Idaho 2012). Generally, what constitutes consideration is a matter between the parties. "Generally, courts will not assess the sufficiency of consideration." *Id.* While consideration "must have some value in the eyes of the law," the parties to the contract "can fix on anything not in itself unlawful as a consideration and put [their] own value on it." *Id.* (quoting *McMahon v. Auger*, 8357 P.2d 374, 380 (1960)). Furthermore, "[w]here an agreement is captured within a written instrument, a presumption arises that it is supported by consideration." *Id.*

As previously stated, the Court finds that the Arbitration Agreement is mutually binding despite certain statements contained in the DRP and Acknowledgment reflecting the Defendants' explicit reservation of the right to change the employee handbook with 15 days' notice. This is because the Arbitration Agreement is not impacted by the Employee Handbook but is an independent contract. In addition, any changes to the Employment

**MEMORANDUM DECISION AND ORDER- 8**

Handbook shall only apply prospectively and do not apply to disputes "for which a proceeding has been initiated pursuant to the then existing process." (Dkt. 8-4, p. 7).

In short, the consideration can be found in the mutuality of obligation. It can also be found in the fact the parties agreed to continue the employment relationship in which the Defendants continued to employ Plantiff on the condition that he agree to continue to work for the Defendants and arbitrate any dispute arising from that employment.

### 2. The Arbitration Agreement is Enforceable and Not Unconscionable.

In Idaho, unconscionability is a question of law. *Bakker v. Thunder Springs— Wareham, LLC,* 108 P.3d 332, 339 (2005). An agreement to arbitrate may be voided if the Court finds it is both procedurally and substantively unconscionable. *Lovey v. Regence BlueShield of Idaho*, 72 P.3d 877, 881-82 (Idaho 2003).

#### A. *Procedural Conscionability*

"Procedural unconscionability may arise when the contract 'was not the result of free bargaining between the parties.'" *Lovey,* 72 P.3d at 882 (quoting *Northwest Pipeline Corp. v. Forrest Weaver Farm, Inc.,* 646 P.2d 422, 425 (1982)). "Lack of voluntariness can be shown by factors such as high-pressure tactics, coercion, oppression, or threats short of duress." *Id.* (internal citations omitted). "It can also be shown by great imbalance in the parties' bargaining power with the stronger party's terms being nonnegotiable and the weaker party being prevented from being able to contract with another party on more favorable terms or refrain from contracting at all." *Graves v. George Fox University*, 2007 WL 2363372, at *8 (D. Idaho, Aug. 16, 2007) (citing *Lovey,* 72 P.3d at 881-82).

**MEMORANDUM DECISION AND ORDER- 9**

Plaintiff argues the Arbitration Agreement is unconscionable because there was a lack of voluntariness. (dkt. 11, p. 9.) Plaintiff asserts that Defendants, as the employer, had far greater bargaining power than Plaintiff, an unsophisticated parts salesman. *Id.* In addition, Plaintiff notes that Defendants presented him with the Arbitration Agreement and employee handbook after he had been working for the Defendants for a number of years and his only choices were to sign the agreement or resign his employment. *Id.* Plaintiff further contends he was at a bargaining disadvantage due to familial, financial, and economic pressures that Defendants knew about. *Id.*

The Court finds Plaintiffs' allegations regarding the procedural unconscionability do not rise to the level necessary to constitute unconscionability under existing Idaho precedent. Plaintiff essentially argues that the contract is procedurally invalid because it is an adhesion contract but that, alone, is not sufficient to support a finding of procedural unconscionability.

An adhesion contract is "an agreement between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis.'" *Lovey*, 72 P.3d at 883. Adhesion contracts are not per se unconscionable. *See AT&T Mobility LLC*, 563 U.S. at 346; *see also Lovey*, 72 P.3d at 883 ("an adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms. Adhesion contracts are a fact of modern life. They are not against public policy."). Use of an adhesion contract "may constitute procedural unconscionability if [Plainiff] was prevented by market factors, timing, or other pressures from being able to contract with

**MEMORANDUM DECISION AND ORDER- 10**

another party on more favorable terms or to refrain from contracting at all." *Lovey*, 72 P.3d at 883.

In this case, Plaintiff has failed to set forth allegations or establish a record that would support a finding of procedural unconscionablity. First, the Arbitration Agreement clearly and unambiguously states that an "employee will not be subject to disciplinary action of any kind for opposing the arbitration provisions of the agreement." (Dkt. 8-3, p. 2.) Second, there is no allegation that Plaintiff tried to, or would have tried to, negotiate different terms of the contract. Third, Plaintiff has not shown what factors, timing, or other pressures would have prevented him from obtaining employment from another employer who did not require arbitration as a means of dispute resolution. Accordingly, the record is devoid of facts that would support a finding of procedural unconscionability under Idaho law.

### B. Substantive Conscionability

Substantive unconscionability relates to the terms of the contract or provision at issue. *Lovey,* 72 P.3d at 881-82. "The contract or provision is substantively unconscionable if it is a bargain that no person in his or her senses and not under delusion would make on the one hand and that no honest and fair person would accept on the other. Factors to consider include whether the contract or provision is one-sided or oppressive." *Id.* at 882 (citing *Walker v. American Cyanamid Co.,* 948 P.2d 1123, 1129 (1997)).

Plaintiff argues the Arbitration Agreement is substantively unconscionable because it is overbroad, oppressive, and one-sided. (Dkt. 11, pp. 9-10.) In addition, Plaintiffs argue,

**MEMORANDUM DECISION AND ORDER- 11**

again, that there is no mutuality of obligation and Defendants could argue the Arbitration Agreement was unenforceable, because it was not signed by any of the Defendants. *Id.*

The Court does not find these arguments compelling. The Arbitration Agreement is not so one-sided as to be unconscionable. The scope appears to be reasonable. Although certain claims by the Company are notably excepted, these claims are limited to claims for equitable or injunctive relief. Moreover, there is no allegation, and it does not appear, that the arbitrator selection, administration, procedure, or cost provisions are unfair.

Plaintiff also seems to argue that the DRP must be considered separately and, on its own, is substantively unconscionable. However, the Court finds this argument irrelevant to the issues that must be decided on the instant motion. The Arbitration Agreement, on its own and combined with the DRP, is a fully enforceable contract drafted by the Defendants and signed by the Plaintiff. In that contract, the Court finds clearly applicable terms, mutual assent, consideration, and a straightforward means of resolving employment disputes efficiently and expeditiously through arbitration. Again, the record is devoid of facts that would support a finding that the Arbitration Agreement is substantively unconscionable.

## CONCLUSION

The Arbitration Agreement is a valid and enforceable contract. Therefore, the Court grants Defendant's Motion to Compel and dismisses Plaintiff's Complaint.[1]

---

[1] While the Court has authority under the FAA to stay these proceedings pending arbitration, 9 U.S.C. § 3, neither party has requested that it do so.

**MEMORANDUM DECISION AND ORDER- 12**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED Defendant's Motion to Compel Arbitration and Dismiss Lawsuit (Dkt. 8) is **GRANTED**. Plaintiff's Complaint is dismissed without prejudice.

DATED: May 24, 2017

Edward J. Lodge
United States District Judge